Leonard Leigh Finz, J.
This proceeding, apparently under CPLR article 78, although not so denominated, appears to be but another reaction of outrage by a community to the curtailment of library facilities brought about by a continuing and crushing financial crisis.
It is the partial "shut down” of library doors that precipitates this application and the correlative relief now being sought:
(1) that the entire public library system is in violation of section 1 of article VIII of the New York State Constitution;
(2) that the Public Library No. 32, Rosedale Branch, be kept open on a six-day-a-week schedule;
(3) that hearings be conducted pertaining to the rescheduling of library branches throughout the City of New York and particularly in the County of Queens;
(4) that the respondents report publicly as to the criteria used whereby certain branch libraries are open three days per week and other branches open six days per week;
(5) that the respondents report to the public the sources of funding for the library system within the City of New York and in particular the Borough of Queens.
The major grievance to which this proceeding is addressed relates to the recent institution by the Queens Borough Public Library of a system of "pairing” whereby branch libraries in or near particular communities would be paired. By this procedure when one branch would be open, the other would be closed. As such, the personnel necessary to operate the library would be deployed from one to the other, thereby enabling the City of New York and the library to provide service to the various communities despite the decrease in funds which would make the customary six-day week library facility fis *536 cally impossible. By the institution of this system, the Rose-dale Branch Library, the subject of this proceeding, was closed on Monday, Wednesday and Friday and open on Tuesday, Thursday and Saturday of each week. It appears that the library system, unfortunately, was caught in the same economic grinder as all other services previously rendered by the City of New York to its citizenry. It is this library service cutback which has angered the taxpaying public which now seeks a judicial review of the actions taken by the library.
There appears to be neither statutory nor decisional law advanced by the petitioners to support their contention that the public library system is in violation of section 1 of article VIII of the Constitution of the State of New York. If the position of the petitioners were legally valid, it would spell the termination and destruction of the entire library system with the invaluable services it renders, during such time as the economic shroud would continue to cover our embattled city. Indeed, it might occasion the permanent elimination of the library system as we know it, since, if the position of the petitioners were correct, no funds whatever could be directed by the city to the library. No other source of funds being available, the library would, perforce, shut its doors, thereby exacerbating and hastening the decline of the educational and cultural health of the city, once acclaimed as the finest in the Nation.
While the court must always uphold a position which is legally and equitably sound, the urgent nature of this petition combined with the severe consequences implicit therein mandates a close examination of this total controversy.
The Queens Borough Public Library is a corporation created by chapter 164 of the Laws of 1907 of the State of New York, to manage and operate the public libraries in the Borough of Queens. It is funded out of the budget of the City of New York, which contributes all of the funds necessary for the administration of the public library system. Section 1 of article VIII provides: "No county, city, town, village or school district shall give or loan any money or property to or in aid of any individual, or private corporation or association, or private undertaking, or become directly or indirectly the owner of stock in, or bonds of, any private corporation or association”. In furtherance of their position, the petitioners quote from Opinions of the State Comptroller (20 Opns St Comp, 1964, p 355), which states that "A city may not * * * *537 contribute a sum of money to a private corporation which will use the same for the support of a free association library”. There is, however, a noteworthy distinction between an allotment of public funds directly to the library system to finance its administration and contributing the same for the support of a free association library. In the same opinion, the Comptroller quotes from section 256 of the Education Law which provides "Any authority named in section two hundred fifty-five may grant money for the support of free association libraries, provided such libraries are registered by the regents”. It is indicated that the Queens Borough Public Library has been registered by the Board of Regents. In other words, it is said that an appropriation by a municipal corporation or school district to a free association library as consideration for the maintenance of public library service cannot be a gift or donation within the meaning of this section. (Opn Counsel Ed Dept, 1951; 1 Ed Dept Rep 707.)
It is quite apparent that the City of New York makes neither a gift nor a contribution to a free association library. The method for funding the Queens Borough Public Library is that the corporation under its agreement with the city, submits a detailed budget indicating the funds necessary for the administration and the operation of the library and its various branches. The city then appropriates what it considers to be sufficient for these operations. Both the budget submitted by the library and the amounts appropriated for their purpose are matters of public record, so that there is no secret as to the method of funding of the library, and, consequently, no need to inquire into the source of funding. Throughout the City of New York there have been proceedings brought to enjoin the closing of these various public libraries as well as other public facilities. None of these have been successful. Efforts by a proceeding brought in the Federal court have similarly failed. (N.A.A.C.P. v Groh, Civ No. 75-1793 12-23-75.) Accordingly, the constitutional argument raised must fail.
We now proceed to the remaining issues before this court. It is not within the province of the court to direct the respondents to keep the library open on a six-day schedule when the funds are not available for this purpose. There is nothing in the petition presented here to show that the action of the respondents is other than reasonable in view of the depressed fiscal conditions prevailing. In addition, there is considerable doubt that this proceeding can be authorized by any of the *538 provisions of CPLR 7803, since it does not involve the failure by respondents to perform a duty enjoined upon them by law, nor that they are proceeding without or in excess of jurisdiction, nor that the action taken was arbitrary or capricious or an abuse of discretion, nor as a result of a hearing unsupported by substantial evidence. (See Matter of Irving v Finger Lakes State Parks Comm., 12 Misc 2d 1087.)
This court therefore finds that the actions taken and programs pursued by the library were reasonable and proper under the strained fiscal circumstances then and now existing. That as such, the procedures employed by the library were neither arbitrary nor capricious but within a structure of reasonable standards designed to afford the maximum library service under difficult circumstances.
While the services currently being rendered by the library may not be entirely acceptable, they nevertheless provide the community with such services as the limited finances of the city may allow. Being open three days a week instead of six may not provide the optimum service to which the people of the city have become accustomed, but with a rearrangement of their schedules, parents and children may find that they can obtain at least the basic service for which the library is intended. Such a plan, while not a panacea, can serve the total community without the necessity of denying any person access to some reasonable library facility.
At present we are suffering through a most difficult period. Municipal services have been reduced to a level that produces a legitimate fear in the minds of all concerned citizens. We can be hopeful, however, that the present financial crisis will be ameliorated sometime in the future and a return to economic tranquility and with it a reopening of all library doors in the necessary pursuit of learning and knowledge.
Accordingly, the relief sought herein is denied.
Petition is dismissed.